STREAMFEEDER, LLC,
Plaintiff–Appellee,

v.

SURE–FEED SYSTEMS, INC. and
Mailing Machine Service, Inc.,
Defendants–Appellants.

No. 98–1521.

United States Court of Appeals,
Federal Circuit.

April 20, 1999.

Kenneth A. Liebman, Faegre & Benson, of Minneapolis, Minnesota, argued for plaintiff-appellee. With him on the brief were David J. Gross and R. Carl Moy.

J. Derek Vandenburgh, Merchant, Gould, Smith, Edell, Welter and Schmidt, P.A., of Minneapolis, Minnesota, argued for defendants-appellants. With him on the brief were Robert Bennett, Donald R. McNeil and Eric Hageman, Bennett, Brown & McNeil, P.A. Of counsel on the brief was Daniel M. Pauly, Merchant, Gould, Smith, Edell, Welter and Schmidt, P.A.

Before LOURIE, SCHALL, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Sure–Feed Systems, Inc. and Mailing Machine Service, Inc. (collectively "Sure–Feed") appeal from the July 22, 1998 order of the United States District Court for the District of Minnesota adopting the jury's finding of infringement of claims 1, 2, and 8 of U.S. Patent 4,991,831 and denying Sure–Feed's motion for judgment as a matter of law, or in the alternative, a new trial. *See Streamfeeder, LLC v. Sure–Feed Sys., Inc.,* Civ. No. 97–03/RHK/FLN (D.Minn. July 22, 1998). Because we conclude that the district court erred in adopting the jury's finding of infringement, we reverse, and thus do not reach the other issues raised on appeal.

## BACKGROUND

A. *The Invention*

The patent at issue involves devices known as "bottom sheet feeders" which collate paper and other thin materials for processing in a number of industrial applications, including mass mailing, printing, and binding. *See* U.S. Patent 5,601,282, col. 1, ll. 12–23. Due to its widespread industrial application, bottom sheet feeder technology is a crowded art and is the subject of hundreds of patents. Streamfeeder is the assignee of U.S. Patent 4,991,831, which is directed to a "paper sheet feeding apparatus and, more particularly, to an apparatus for serially feeding flat sheets of paper from the bottom of a vertical stack of such sheets and so on to permit subsequent processing of each individual sheet." *See* '831 patent, col. 1, ll. 5–9. Independent claim 1, the only such claim at issue, reads as follows:

1. An apparatus for serially feeding sheets in a forward direction from the bottom of a generally vertical stack of such sheets comprising:

means for supporting the generally vertical stack of sheets and so that the stack defines a forward side composed of aligned forward edges of the sheets, and a bottom, said supporting means including endless belt means and means rotatably mounting said endless belt means so as to have an upper run positioned to extend across the bottom of said stack;

drive means for rotating said endless belt so that said upper run moves in the forward direction; and

means including a stationary gate forming member positioned above said upper run of said belt means and adjacent the forward side of said stack and so as to define a nip which forms a gap between said gate forming member and said upper run, for permitting the lowermost sheet of the stack to pass forwardly from the stack through said nip, said gate forming member including first surface means facing toward forward side of said stack so as to engage the forward edges of the sheets in the stack, and second surface means at said nip and having a coefficient of friction which is higher than that of said first surface means, and such that the lowermost sheet is free to pass through said nip without significant frictional resistance while the sheet immediately above the lowermost sheet is retarded in moving through said gap by its frictional engagement with said second surface means.

*Id.* at col. 7, l. 48 to col. 8, l. 10. Dependent claim 2 more. particularly claims a sheet feeding apparatus with a "rear support member," *see id.* at col. 8, ll. 11–20, and dependent claim 8 more particularly claims a sheet feeding apparatus with a "sensing means" to monitor paper feeding, *see id.* at ll. 42–44. Figure 4 of the '831 patent depicts the apparatus as follows:

The accused device is the commercial embodiment of U.S. Patent 5,601,282, which is assigned to Sure–Feed. This embodiment is shown in Figure 1 of the '282 patent:

**Fig. 1**

Both devices operate by taking a stack of paper, *see* '282 patent, fig. 1 at 25, '831 patent, fig. 4 at S, and feeding the bottommost sheet forward through the machine by way of "endless belts" upon which the stack of paper rests, *see* '282 patent, fig. 1 at 20, '831 patent, fig. 4 at 30. A "gate" prevents any additional sheets from traveling with the bottom-most sheet, thereby enabling the sheets to be processed one at a time. *See* '282 patent, fig. 1 at 24, '831 patent, fig. 4 at 51. The space between the belt and the gate through which the sheets individually pass is referred to as the "nip." *See* '282 patent, fig. 1 (not numbered), '831 patent, fig. 4 at 52.

The equivalency of the gate element of the accused device and the gate limitation in the claims is at the center of the dispute between the parties. The *circular*, stationary gate disclosed in Streamfeeder's '831 patent is depicted in detail in Figure 5:

FIG. 5.

Figure 5 indicates (albeit not as clearly as might be desired) that the circular gate has two surfaces, a surface facing the stack of papers (Surface 1) and a surface at the nip (Surface 2). The written description describes the creation of these two surfaces in the following manner:

> [T]he gate forming member comprises a generally cylindrical roll **51** [with] ... a plurality of annular grooves **58** extending about the circumference thereof.... [T]he grooves are relatively deep along a first half of the peripheral surface of the roll [Surface 1], and relatively shallow along a second half of the peripheral surface [Surface 2].... The roll **51** further includes a[n][O] ring **62** disposed in each of the grooves, with the rings being composed of a material having a higher coefficient of friction than that of the material of the roll.

'831 patent, col. 4, ll. 42–64. Thus, the gate's grooves, within which the O rings fit, are deeper on the side facing the stack of paper, such that the O rings are not exposed. This design creates Surface 1, which is simply the acetal, metallic, or other smooth material of which the gate is constructed. *See id.* at col. 5, ll. 10–11, 14–15. Surface 1 has a relatively low coeffi-

cient of friction ($\mu$) associated with it, thus allowing the sheets in the stack to slide easily downward toward the nip. See id. at col. 7, ll. 10–14. At the nip, however, the grooves are raised, exposing the elastomeric or other material of which the O rings are fabricated. This design creates Surface 2, which has a relatively high ($\mu$) when compared with Surface 1. The higher ($\mu$) value prevents the sheet above the lowermost sheet from moving through the nip with the lowermost sheet, see id. at col. 7, ll. 16–22, *i.e.*, the sheets are prevented from "double-feeding."

In contrast, the design of the pivotable gate of Sure–Feed's device, *see* '282 patent, fig. 1, differs in two main respects from the gate disclosed in the '831 patent: the Sure–Feed gate is *elliptical* and the grooves in which its O rings fit are of *uniform depth*. The '282 patent discloses that the elliptical design is meant to enhance the "shingling" of the sheets of paper, *see id.* at col. 1, ll. 39–43, whereby the sloping, elliptically shaped gate causes the sheets to move in a staggered fashion as they approach the nip, each sheet moving slightly further in the direction of feeding than the one above it. *See id.*, fig. 1 at 25

(illustrating shingling). Shingling enhances the separability of sheets as they are fed individually through the nip, a process which is particularly advantageous in cases where the sheets being fed are slick. *See* '831 patent, col. 7, ll. 24–26. As to the gate's grooves, their uniform depth exposes the O rings equally across the surface of the ellipse, resulting in a gate with a uniformly high ($\mu$) on all surfaces that come in contact with the sheets being fed.

Streamfeeder alleged that in view of the uniformly high about the surface of the elliptical gate, a different factor is responsible for causing the sheets to feed individually in the Sure–Feed device, namely, differing normal forces. Normal force (N) is simply the force applied perpendicular to a surface; here, according to Streamfeeder, a normal force is being applied by the elliptical gate to the sheets of paper with which it comes in contact. More specifically, Streamfeeder continues, the elliptical shape of the gate results in a higher N being applied by the gate's surface at the nip when compared to the surface facing the paper. As a result, the sheets move readily down toward the nip but are prevented from double-feeding by the higher N at the nip.

## B. *The District Court*

Streamfeeder sued Sure–Feed, alleging that Sure–Feed's device infringes claims 1, 2, and 8 of the '831 patent under the doctrine of equivalents. Literal infringement was not alleged. The parties' arguments focused on the accused device's gate element, and specifically on whether that element functioned the same *way* as the gate limitation in the claims at issue. Streamfeeder contended that although the claimed gate employs surfaces with different ($\mu$) values and the accused device's gate employs surfaces with different N values, both gates prevent double-feeding in the same way via surfaces with different *frictional force* values. Streamfeeder based this argument on the equation

$$F = N\,(\mu)$$

which relates frictional force (F) to normal force (N) and coefficient of friction ($\mu$). The equation reveals that an increase in *either* ($\mu$) or N results in a proportional increase in F. Thus, Streamfeeder argued, the equation shows that Sure–Feed's device, which varies N, functions in the same way as the claimed gate, which varies ($\mu$).

Sure–Feed moved for summary judgment of noninfringement. Focusing its arguments on claim 1, Sure-feed asserted, inter alia, that if the claims were "expanded" under the doctrine of equivalents to read on the accused device, they would impermissibly read on the prior art. *See* Sure–Feed's Br. in Supp. of Mot. for Summ. J. at 25–29. Citing *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 14 U.S.P.Q.2d 1942 (Fed.Cir.1990), Streamfeeder responded by providing a hypothetical claim based on claim 1. The court denied Sure–Feed's motion, holding that "Streamfeeder's hypothetical claim does not 'ensnare the prior art' and could have been allowed by the PTO." *See Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, Civ. No. 97–03/RHK/JMM, at 10 (D.Minn. Apr. 17, 1998). The district court found that Streamfeeder's proposed "hypothetical claim could have been patentable and, therefore, there is no bar to the application of the doctrine of equivalents to the instant case." See *id.* The court further held that a genuine issue of fact existed as to whether the gate element of the accused device functions in the same way as the gate limitation in the claims at issue. See *id.* at 11.

Shortly thereafter, the court ruled on Streamfeeder's seven motions in limine; only Motion No. 1 is relevant here. In Motion No. 1, Streamfeeder sought to exclude 195 of 203 prior art patents which were submitted by Sure–Feed under 35 U.S.C. § 282 (1994). The court granted the motion, concluding that, under the discovery rules of the Federal Rules of Civil Procedure, the patents were disclosed in

an untimely fashion. *See Streamfeeder, LLC v. Sure–Feed Sys., Inc.,* Civ. No. 97–03/RHK/JMM, at 1 (D.Minn. May 19, 1998). This ruling became one of the bases for Sure–Feed's motion for a new trial. *See* Def.'s Mem. in Supp. of Mot. for J. as a Matter of Law or, in the Alternative, a New Trial at 22–23.

The case was tried before a jury which found that Sure–Feed's device infringed claims 1, 2, and 8 of the patent. In a subsequent order, the district court adopted the jury's findings of fact and denied Sure–Feed's JMOL/new trial motion. *See Streamfeeder, LLC v. Sure–Feed Sys., Inc.,* Civ. No. 97–03/RHK/FLN, at 1–2 (D.Minn. July 22, 1998). Sure–Feed appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standards of Review*

■ Infringement analysis is a two-step process. The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device. *See Personalized Media Communications, L.L.C. v. International Trade Comm'n,* 161 F.3d 696, 702, 48 U.S.P.Q.2d 1880, 1885 (Fed.Cir.1998). Claim construction is a question of law, while infringement, either literal or under the doctrine of equivalents, is a question of fact. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 U.S.P.Q.2d 1674, 1676 (Fed.Cir.1998). "Hypothetical claim analysis" is a methodology that may facilitate the determination whether an asserted scope of equivalents is permissible in view of the prior art. *See Wilson,* 904 F.2d at 677, 14 U.S.P.Q.2d at 1942. Determining whether the scope of equivalents accorded to a particular claim would encompass the prior art is an issue of law which we

review de novo. *See id.* at 683, 904 F.2d 677, 14 U.S.P.Q.2d at 1948.

### B. *The Doctrine of Equivalents and Hypothetical Claim Analysis*

■ Sure–Feed argues that the court erred in adopting Streamfeeder's hypothetical claim because the scope of equivalents sought by Streamfeeder is prohibited by the prior art. Streamfeeder responds that Sure–Feed never asked the court to enter JMOL on this ground, thereby waiving this argument. Streamfeeder contends that even if this argument was not waived, Sure–Feed failed to carry its burden of showing that the scope of equivalents is prohibited by the prior art by merely showing that one of the limitations of the hypothetical claim is in the prior art. Sure–Feed replies that the burden is on the *patentee* to show that its asserted range of equivalents does not cover the prior art. Moreover, Sure–Feed argues that Streamfeeder improperly "expanded" one limitation and "narrowed" another limitation in constructing its hypothetical claim.[1] We agree with Sure–Feed that the court erred in adopting Streamfeeder's hypothetical claim, and we further conclude that a legally-acceptable hypothetical claim that would encompass Sure–Feed's device would read on the prior art.

■ In *Wilson,* we set forth a hypothetical claim methodology to aid in determining whether a particular claim may be infringed under the doctrine of equivalents. *See Wilson,* 904 F.2d at 684, 14 U.S.P.Q.2d at 1948; see also *Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1449, 17 U.S.P.Q.2d 1806, 1810 (Fed. Cir.1991). Under that methodology, the patentee may propose a hypothetical claim which is broad enough in scope to *literally* read on the accused device. *See Wilson,* 904 F.2d at 684, 14 U.S.P.Q.2d at 1948. If

1. In *Wilson,* we observed that the doctrine of equivalents does not "expand" or "broaden" claims, but instead *expands the right to exclude. See Wilson,* 904 F.2d at 684, 14 U.S.P.Q.2d at 1948. For convenience, however, we will utilize these terms, cognizant of the fact that it is the right to exclude which is being expanded, *not* the claims.

the hypothetical claim could have been allowed by the Patent and Trademark Office (PTO) in view of the prior art, then the prior art does not preclude the application of the doctrine of equivalents and infringement may be found. See *id.* On the other hand, as in the PTO's examination process, references may be combined to prove that the hypothetical claim would have been obvious to one of ordinary skill in the art and thus would not have been allowed. *See Key Mfg.*, 925 F.2d at 1449, 17 U.S.P.Q.2d at 1810.

Following the direction of *Wilson,* Streamfeeder presented the district court with a hypothetical claim in response to Sure–Feed's motion for summary judgment of noninfringement. That claim, hypothetical claim 1, is a modified version of original claim 1, with additions indicated by underlining and deletions indicated by brackets:

1. An apparatus for serially feeding sheets in a forward direction from the bottom of a generally vertical stack of such sheets comprising:

means for supporting the generally vertical stack of sheets and so that the stack defines a forward side composed of aligned forward edges of the sheets;

and a bottom, said supporting means including endless belt means and means rotatably mounting said endless belt means so as to have an upper run positioned to extend across the bottom of said stack;

drive means for rotating said endless belt so that said upper run moves in the forward direction; and

means including a stationary gate forming member positioned above said upper run of said belt means and adjacent the forward side of said stack and so as to define a nip which forms a gap between said gate forming member and said upper run, for permitting the lowermost sheet of the stack to pass forwardly from the stack through said nip, said gate forming member *comprising a cylindrical member having a plurality of annular grooves formed inwardly from a periphery thereof at regularly spaced intervals and with elastomeric bands disposed in said annular grooves and* including first surface means facing toward forward side of said stack so as to engage the forward edges of the sheets in the stack, and second surface means at said nip [and having a coefficient of friction which is higher than that of said first surface means], *said plurality of elastomeric bands and said cylindrical member being arranged to present higher frictional resistance to the forward edges of the sheets at said second surface means than at said first surface means* and such that the lowermost sheet is free to pass through said nip without significant frictional resistance while the sheet immediately above the lowermost sheet is retarded in moving through said gap by its frictional engagement with said second surface means.

*See* Streamfeeder's Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 30. Streamfeeder's hypothetical claim is nearly identical to original claim 1, except for two differences: first, the gate limitation has been narrowed to consist specifically of a cylindrical member containing elastomeric bands, and second, the limitation requiring two surfaces with two different coefficient of friction values has been broadened to recite two surfaces with two different frictional force values. Sure–Feed contends that by simultaneously broadening one limitation of original claim 1 and narrowing another Streamfeeder has in effect "rewritten" the claim.

■ Before proceeding further with the merits of the hypothetical claim analysis, we must first address the procedural question as to which party bears the burden of proving whether the hypothetical claim does or does not read on the prior art. Citing *National Presto Industries, Inc. v. West Bend Co.,* Streamfeeder contends that the burden rested on Sure–Feed to prove that the claim reads on the prior art. *See National Presto Indus., Inc. v. West*

*Bend Co.*, 76 F.3d 1185, 1192, 37 U.S.P.Q.2d 1685, 1689 (Fed.Cir.1996). In *National Presto* we stated:

> When the patentee has made a *prima facie* case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer, not the trial judge.

*National Presto*, 76 F.3d at 1192, 37 U.S.P.Q.2d at 1689. Streamfeeder's reliance on *National Presto* is misplaced, however, because while the burden of going forward rests with the accused infringer, the burden of persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee:

> In this context it is important to remember that the burden is on Wilson [the patentee] to prove that the range of equivalents which it seeks would not ensnare the prior art.... The patent owner has always borne the burden of proving infringement, *see Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557, 4 U.S.P.Q.2d 1772, 1776 (Fed.Cir. 1987), and there is no logical reason why that burden should shift to the accused infringer simply because infringement in this context might require inquiry into the patentability of a hypothetical claim. Any other approach would ignore the realities of what happens in the PTO and violate established patent law.

*Wilson*, 904 F.2d at 685, 14 U.S.P.Q.2d 1948–49. Thus, after the accused infringer satisfies its burden of going forward (here, by presenting prior art which shows that the asserted range of equivalence would encompass the prior art), *Wilson* indicates that "the burden to prove," *i.e.*, the burden of persuasion, rests on the patentee to show that its claim does not cover the prior art.

■ Turning to the merits, we agree with Sure–Feed and conclude that the district court erred as a matter of law in adopting Streamfeeder's hypothetical claim, because such a claim impermissibly narrowed the gate member limitation. A hypothetical claim analysis is not an opportunity to freely redraft granted claims. That opportunity existed in the PTO, where the submitted claims were examined for patentability. Other statutorily prescribed procedures exist for post-grant modification of claims in the PTO in appropriate circumstances. *See, e.g.*, 35 U.S.C. § 252 (1994) (reissue); 35 U.S.C. § 307 (1994) (reexamination). While use of a hypothetical claim may permit a minor extension of a claim to cover subject matter that is substantially equivalent to that literally claimed, one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here, and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art. Slight broadening is permitted at that point, but not narrowing. *See Jurgens v. McKasy*, 927 F.2d 1552, 1561, 18 U.S.P.Q.2d 1031, 1038 (Fed.Cir.1991) ("[I]t may be helpful to 'conceptualize' the prior art limitation on the doctrine of equivalents by envisioning a hypothetical patent claim—similar to the asserted claim but *broad enough* to literally cover the accused products—and testing whether that claim would have been patentable in view of the prior art.") (emphasis added). Wholesale redrafting of granted claims during litigation by narrowing and expanding the claims at the same time in creating a hypothetical claim is not supported by our case law and it avoids the examination process. It is contrary to the statutory requirement that an applicant "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his [or her] invention," 35 U.S.C. § 112 (1994), a requirement that presupposes a PTO examination, which does not occur with a hypothetical claim. Hypothetical claim analysis thus cannot be used to redraft granted claims in litigation by narrowing and broadening a claim at the same time.

■ When one considers a permissible hypothetical claim in this case, *i.e.*, Streamfeeder's hypothetical claim without the narrowed limitation, it is clear that the

hypothetical claim reads on the prior art; Streamfeeder failed to satisfy its ultimate burden of persuasion to the contrary.[2] Sure–Feed satisfied its burden of coming forward with evidence that the hypothetical claim reads on the prior art by presenting a number of prior art patents. U.S. Patent 4,715,593 (Godlewski), in view of U.S. Patent 4,606,535 (Larson), are the key patents, and we are satisfied that these references are sufficiently important, *i.e.*, significant to the bottom sheet feeder art, that those skilled in that art would have been motivated to combine them, *see In re Rouffet*, 149 F.3d 1350, 1355–56, 47 U.S.P.Q.2d 1453, 1456 (Fed.Cir.1998) (stating that motivation to combine references may come from "the ordinary knowledge of those skilled in the art that certain references are of special importance in a particular field.").

Sure–Feed correctly observes that Streamfeeder conceded that Godlewski contains all of the limitations of original claim 1 except for the "endless belt means" and the "second surface means at said nip . . . having a coefficient of friction that is higher than that of said first surface means." *See* Streamfeeder Resp. Br. at 14–15. The endless belt means, however, is clearly disclosed in Larson. *See* '535 patent, col. 3, l. 65. As to the "second surface means at said nip . . . having a coefficient of friction that is higher than that of said first surface means" limitation, this was broadened in the hypothetical claim by essentially replacing "coefficient of friction" with "frictional resistance," *i.e.*, frictional force. This broadening encompasses Larson, which discloses a gate containing two sur-

faces which vary in *normal force. See id.* at ll. 40–50. Thus, Sure–Feed successfully carried its burden of going forward by providing prior art which, by disclosing all of the limitations of the hypothetical claim, would have rendered it unpatentable. Streamfeeder, in contrast, failed to carry its burden of persuasion, simply arguing in various ways that Sure–Feed failed to carry *its* burden.

 As a final matter, we must address whether to affirm the judgment with respect to dependent claims 2 and 8 on the ground that Sure–Feed failed to argue noninfringement of those claims in its briefing before this court or in its motion for summary judgment. Sure–Feed perhaps chose that strategy based on the axiomatic principle that if an accused infringer does not infringe an independent claim, it cannot infringe claims that depend on that independent claim. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9, 10 U.S.P.Q.2d 1201, 1208 n. 9 (Fed.Cir.1989). Streamfeeder · agreed, stating in its summary judgment response: "Streamfeeder contends that dependent claims 5, 8, 9, and 11 [sic, issued claims 2 and 8] are infringed, but agrees that defendants' motion stands or falls based on whether a reasonable jury could find that claim 1 is infringed." *See* Streamfeeder's Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 8 n. 3. Thus, the parties staked the outcome regarding the dependent claims on the outcome of claim 1.

In *Wilson*, we noted a narrow, counterintuitive exception to the general principle that, when one does not infringe a broader

2. Streamfeeder urges that Sure–Feed raised its argument that the hypothetical claim encroaches upon the prior art only in its summary judgment motion but not in its JMOL motion, and that accordingly, this argument was waived. We do not agree. Because this is a procedural issue which is not unique to patent law, we must apply the law of the regional circuit in which the district court sits. *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1384, 49 U.S.P.Q.2d 1618, 1622 (Fed.Cir.1999). Under Eighth Circuit law, Streamfeeder's argument is clearly without merit. Sure–Feed raised this issue of law prior to the case going to the jury, so it was therefore unnecessary for it to have been raised subsequently in its JMOL motion. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1338 n. 12 (8th Cir.1997) ("[T]his legal question . . . was preserved for appeal because it was argued to the·district court before the case was submitted to the jury." (citing *Bottineau Farmers Elevator v. Woodward–Clyde Consultants*, 963 F.2d 1064, 1073 (8th Cir.1992) (holding that issue of law raised in summary judgment motion was preserved for appeal despite not being reasserted in motions for directed verdict or JNOV))).

claim, one cannot infringe a dependent claim containing all of that broader claim's limitations plus more:

> While this proposition is no doubt generally correct, it does not apply in the circumstances of this case. Here, we have reversed the judgment of infringement of independent claim 1 solely because the asserted range of equivalents of the claim limitations would encompass the prior art Uniroyal ball. The dependent claims, of course, are *narrower* than claim 1; therefore, it does not automatically follow that the ranges of equivalents of these narrower claims would encompass the prior art, because of their added limitations.

*Wilson,* 904 F.2d at 686, 14 U.S.P.Q.2d at 1949. Because Streamfeeder acknowledged in the district court that the dependent claims stand or fall with claim 1, Streamfeeder cannot now seek to sustain the judgment on claims 2 and 8 alone on the basis of that exception.[3] We therefore reverse the judgment of infringement of claims 1, 2, and 8.

### CONCLUSION

The district court erred in adopting the jury's finding of infringement of claim 1, since the hypothetical claim proposed by Streamfeeder encompassing the accused device would not have been patentable over the Godlewski patent in view of the Larson patent. Furthermore, Streamfeeder cannot seek to sustain judgment as to claims 2 and 8, because it previously argued that these claims stand or fall with claim 1. In view of these conclusions, we need not review the denial of Sure–Feed's JMOL/new trial motion. Accordingly, we

*REVERSE.*

---

**3.** Moreover, we note that even if Streamfeeder had asserted hypothetical claims for claims 2 and 8, Sure–Feed would almost certainly have prevailed. The "rear support member" limitation of claim 2 is disclosed as a "retainer bar" in U.S. Patent 3,908,983, *see* '983 patent, col. 2, ll. 34–49, and the sensor limitation in claim 11 is disclosed in Larson, *see* '535 patent, col. 5, ll. 17–26.