[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13124
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 09-20138-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXIS CARRAZANA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 27, 2010)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Alexis Carrazana appeals his 72-month sentence for conspiracy to commit health care fraud. He argues that the district court erred in (1) calculating the loss amount for which he was responsible, (2) applying a two-level enhancement based on its finding that the offense involved the use of "sophisticated means," (3) failing to grant a minor role reduction, (4) imposing a procedurally and substantively unreasonable sentence, and (5) enhancing his sentence based on facts that were not admitted or found by a jury beyond a reasonable doubt. For the reasons set forth below, we affirm.

## I.

Carrazana, a former medical assistant for Midway Medical, Inc. ("Midway"), was charged with conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349. The indictment alleged that owners, doctors, and employees of Midway, a medical clinic that provided injection and infusion treatments to patients with human immunodeficiency virus ("HIV"), conspired to submit fraudulent Medicare claims. It charged that Carrazana administered medically unnecessary injection and infusion treatments and fabricated and signed medical records to reflect that Midway patients had received injections or infusions when, in fact, they had not. The indictment also alleged that chemists artificially manipulated patient blood samples so that subsequent lab testing would make it

2

appear that injections and infusion treatments billed by Midway were medically necessary.

Carrazana pled guilty. At the change-of-plea hearing, Carrazana admitted that he altered medical records, knew that his co-conspirators billed Medicare for medically unnecessary procedures and procedures that were never provided, and knew that chemists manipulated blood samples taken from Midway patients.

The presentence investigation report ("PSI") stated that Carrazana worked at Midway from September 2002 until March 2004 and was responsible for an intended loss of $8,469,920. The PSI set Carrazana's base offense level at 6, pursuant to U.S.S.G. § 2B1.1(a)(2). Carrazana's offense level was increased by 20 levels, pursuant to § 2B1.1(b)(1)(K), because the offense involved a loss of more than $7,000,000, but not more than $20,000,000. Carrazana also received a two-level enhancement under § 2B1.1(b)(9)(C), because the offense involved sophisticated means; a two-level enhancement under § 2B1.1(b)(13)(A), because the offense "involved the conscious reckless risk of death or bodily injury;" and a two-level enhancement under § 3B1.3, for use of a special skill in connection with the offense. Carrazana received a three-level reduction, pursuant to §§ 3E1.1(a), (b), for acceptance of responsibility, resulting in a total offense level of 29. Carrazana's offense level of 29 combined with criminal history category I to yield

a guideline imprisonment range of 87 to 108 months.

Carrazana filed objections to the PSI, arguing that (1) his intended loss should be calculated as less than $7,000,000, because he effectively withdrew from the conspiracy by terminating his employment with Midway in March 2004; (2) he should have received a minor role reduction; (3) the conspiracy did not involve sophisticated means; (4) and the offense did not involve the conscious or reckless risk of death or serious bodily injury. Carrazana also pointed to several factors that he argued supported a sentence below the guideline range.

At the sentencing hearing, the court sustained Carrazana's objection to the § 2B1.1(b)(13)(A) enhancement for conscious or reckless disregard of the risk of death or serious injury. It noted, however, that it would consider that the conspiracy involved administering unnecessary medication, when considering the factors under 18 U.S.C. § 3553(a). The court then determined that Carrazana was subject to a total offense level of 27, criminal history category I, and a guideline imprisonment range of 70 to 87 months. The court overruled Carrazana's objection to the fraud-loss amount, determining that Carrazana did not effectively withdraw from the conspiracy by merely quitting his job in March 2004, because withdrawal from a conspiracy requires "more than just terminating one's act of participation in the conspiracy." The court also declined to grant Carrazana a

4

minor role reduction, finding that, although Carrazana was less culpable than some of his co-conspirators, he still played "an integral role" in the offense. The court denied Carrazana's objection to the two-level sophisticated means enhancement, stating that "certainly the conspiracy clearly qualifies." It also denied Carrazana's request for a below-range sentence, noting that Carrazana's actions "show[ed] a total disregard for everyone else other than [himself]." The court pointed out that Carrazana made a conscious decision every day that he went to work to inject patients with unnecessary medication and noted that Carrazana "obviously wanted to harm society because of his activities over a year and a half where he stole money from a very important Medicare program." The court sentenced Carrazana to 72 months' imprisonment, followed by 3 years of supervised release. It also ordered Carrazana to pay $3,687,893 in restitution.

**II.**

*Loss Amount*

We review "the district court's loss determination for clear error." *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006). The applicable guideline provision provides for an 18-level increase in a defendant's base offense level if the offense involved a loss of more than $2,500,000 and an increase of 20 levels if the offense resulted in a loss of more than $7,000,000. U.S.S.G.

§ 2B1.1(b)(1). The commentary provides that the proper loss amount for purposes of calculating the enhancement is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)).

"[T]he district court may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Dabbs*, 134 F.3d 1071, 1082 (11th Cir. 1998). If a defendant withdraws from a conspiracy, he is not responsible at sentencing for actions taken by co-conspirators after his withdrawal. *Id.* at 1083. In order to prove withdrawal from a conspiracy, the defendant must show "(1) that he has taken affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or to defeat the objectives of the conspiracy; and (2) that he made a reasonable effort to communicate those acts to his co-conspirators or that he disclosed the scheme to law enforcement authorities." *United States v. Starrett*, 55 F.3d 1525, 1550 (11th Cir. 1995). "A mere cessation of participation in the conspiracy is insufficient to prove withdrawal." *Dabbs*, 134 F.3d at 1083; *see United States v. Young*, 39 F.3d 1561, 1571 (11th Cir. 1994) (providing that withdrawal from a conspiracy requires evidence of "an effort to thwart the objectives of the conspiracy"). We have held that a defendant did not take affirmative acts inconsistent with a conspiracy to burn a church where she "did not

put the original fire out; she did not convince the [other coconspirators] to leave [the church]; and she did not announce to the others that she had changed her mind about the original plan." *United States v. Odom*, 252 F.3d 1289, 1299 (11th Cir. 2001); *see also Dabbs*, 134 F.3d at 1083 (holding that a defendant's mere "physical distance from, rather than his repudiation of, the action of his co-conspirators" did not constitute withdrawal).

Carrazana's argument regarding the fraud loss amount is based solely on his contention that he withdrew from the conspiracy by leaving his employment at Midway in March 2004. However, there is no evidence that Carrazana took any action to thwart or disrupt the objectives of the conspiracy. *See Young*, 39 F.3d at 1571; *Odom*, 252 F.3d at 1299. Instead, he merely removed himself from the situation and ceased participation. Furthermore, Carrazana presented no evidence that he communicated to his co-conspirators that he was leaving his employment because he wished to terminate his involvement in the conspiracy. *Starrett*, 55 F.3d 1525, 1550; *Odom*, 252 F.3d at 1299 (noting that the defendant did not inform her co-conspirators that she had "changed her mind about the original plan"). Accordingly, the district court did not clearly err in finding that Carrazana was responsible for losses that accrued after March 2004 because he did not withdraw from the conspiracy by terminating his employment with Midway.

*U.S.S.G. § 2B1.1(b)(9)(C) – Sophisticated Means Enhancement*

"For sentencing issues, [we] review[] a district court's factual findings for clear error and its application of the guidelines *de novo*." *See United States v. Auguste*, 392 F.3d 1266, 1267 (11th Cir. 2004).

The Sentencing Guidelines provide for an enhancement of two levels if "the offense otherwise involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C). Application note 8(B) to that Guideline defines "sophisticated means" as:

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1, comment. (n.8(B)).

The plain language of § 2B1.1(b)(9)(C) provides that the enhancement applies if "*the offense* involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C) (emphasis added). Because the relevant offense is the conspiracy, the district court was permitted to consider the reasonably foreseeable actions of Carrazana's co-conspirators when determining whether the enhancement applies. *See* U.S.S.G. § 1B1.13(a)(1)(B) (providing that, in the case of a criminal conspiracy, guideline

8

calculations shall be based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). Carrazana acknowledged at the plea hearing that he knew that chemists manipulated patients' blood samples before sending to samples to the lab. The PSI also stated that Carrazana was aware of the manipulation of patients' blood samples, and Carrazana failed to object to this factual finding. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that factual findings set forth in a PSI not objected to by a defendant are deemed admitted). Because the manipulation of patients' blood samples constitutes "especially complex . . . conduct pertaining to the . . . concealment of the offense," and because Carrazana admitted that he was aware that this activity was taking place, the district court did not clearly err in applying the two-level "sophisticated means" enhancement. *See* U.S.S.G. § 2B1.1(b)(9)(C) and comment. (n.8(B)).

### *U.S.S.G. § 3B1.2(b) – Minor Role Reduction*

A district court's determination of a defendant's role in an offense constitutes a factual finding to be reviewed only for clear error. *United States v. Rodriguez DeVaron*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*). The defendant bears the burden of proving beyond a preponderance of the evidence that he is entitled to a mitigating role reduction. *Id.* at 939.

9

The Sentencing Guidelines provide for a two-level reduction for a minor participant, defined as an individual "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b) and comment. (n.5). In determining whether a defendant was a minor participant, the court "must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating h[is] base offense level." *DeVaron*, 175 F.3d at 941. The district court "may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." *Id.* at 944. "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *Id.* "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings." *Id.* at 939.

Although Carrazana may have been less culpable than the Midway doctors who supervised the conspiracy and were engaged in fraudulent billing, the district court did not commit clear error in finding that Carrazana did not play a minor role in the conspiracy. In fact, Carrazana's relevant conduct involved actions that were instrumental in avoiding detection of the conspiracy. Before imposing sentence,

10

the district court noted that Carrazana played a "very significant role" in the offense, because his relevant conduct involved injecting patients with unnecessary medication every day that he went to work, over a one-and-a-half year period. These actions were clearly instrumental in the success of the conspiracy, because, if Carrazana had not administered these injections and falsified patients' medical records, Midway would not have received the fraudulent Medicare payments. Furthermore, although the district court had no duty to make any specific subsidiary factual findings regarding the appropriateness of a minor role reduction, the court specifically found that Carrazana played a greater role in the conspiracy than other participants, namely, Midway's patients, and that Carrazana "perform[ed] a very substantial part of this conspiracy." Accordingly, the district court did not clearly err in denying the minor role reduction.

### *Reasonableness of the Sentence*

We review the final sentence imposed by the district court for reasonableness. *United States v. Booker*, 543 U.S. 220, 262-64, 125 S.Ct. 738, 766-67, 160 L.Ed.2d 621 (2005). Specifically, the district court must impose a sentence that is both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). After *Booker*, we established a two-step process for district courts to use in sentencing:

11

first, the district court must consult the Sentencing Guidelines and correctly calculate the sentencing range; second, the district court must consider the factors listed in 18 U.S.C. § 3553(a) in arriving at a reasonable sentence. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

A sentence may be procedurally unreasonable if the district court improperly calculates the guideline range, treats the Sentencing Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. In its consideration of the § 3553(a) factors, the district court does not need to discuss or state on the record each factor explicitly. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, an acknowledgment by the district court that it has considered the defendant's arguments and the § 3553(a) factors will suffice. *Id.* at 1329-30.

Pursuant to § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," namely, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from future crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care. *See* 18

U.S.C. § 3553(a). The sentencing court must also consider the following factors in determining a particular sentence: the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *See* U.S.S.G. § 3553(a)(1), (3)-(7).

After an appellate court has determined that a sentence is procedurally sound, *Gall* directs the appellate court to review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. The review for substantive reasonableness involves examining the totality of the circumstances, including an inquiry into whether the § 3553(a) factors support the sentence in question. *Id.* This Court ordinarily expects a sentence within the guideline range to be reasonable, and the appellant has the burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors. *Talley*, 431 F.3d at 788.

Carrazana's sentence was procedurally reasonable, because the district court specifically stated that it had considered the § 3553(a) sentencing factors and the parties' arguments, and adequately explained its reasons for imposing a 72-month sentence. *See Scott*, 426 F.3d at 1329 (noting that a district court does not need to

13

explicitly state or discuss each § 3553(a) sentencing factors on the record). The court also stated that it had considered the following factors: (1) the conspiracy involved the administration of unneeded medication, (2) Carrazana already benefitted from the court's decision not to impose the two-level enhancement for risk of death or serious bodily harm, (3) Carrazana injected patients with modified blood, thereby showing a "total disregard" for others, (4) Carrazana played a significant role in the offense and injected patients with unnecessary medications on a daily basis, and (5) the harm Carrazana caused to society by stealing money from Medicare for over a year and a half. These facts relate to the following § 3553(a) sentencing factors: the seriousness of the offense, the need to promote respect for the law, the need to deter criminal conduct, and the need to protect the public from future crimes. *See* 18 U.S.C. § 3553(a). Thus, Carrazana's argument that the district court failed to consider the § 3553(a) factors and failed to explain its reasons for imposing the 72-month sentence are meritless.

Carrazana's sentence was also substantively reasonable. The district court correctly found that a sentence at the low end of the guideline range was warranted by the seriousness of the offense and the need for deterrence. For a year and a half, Carrazana routinely injected patients with unnecessary medications and falsified medical records. As the court noted, Carrazana's actions affected not only the

14

patients, but also taxpayers who fund the Medicare program and citizens who receive Medicare benefits. The 72-month sentence is also supported by the need to deter medical professionals from committing Medicare fraud. Although Carrazana argues that the district court failed to consider certain mitigating factors, Carrazana listed these mitigating factors in his sentencing memorandum and the district court stated that it had considered the parties' arguments in deciding on a reasonable sentence. Accordingly, Carrazana's sentence was both procedurally and substantively reasonable.

### *Enhancements Based On Court-Found Facts*

Where a defendant fails to raise a constitutional sentencing argument before the district court, we review for plain error. *United States v.Candelario*, 240 F.3d 1300, 1308 (11th Cir. 2001). "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). We may correct a plain error "only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

Post-*Booker*, "the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005). Thus, the district court may enhance a sentence based on

15

judge-found facts under a preponderance standard so long as the sentence does not exceed the statutory maximum under the United States Code. *United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007), *cert. denied*, 128 S.Ct. 1444 (2008). Under 18 U.S.C. § 1347, the statutory maximum term of imprisonment for an individual who commits health care fraud is 10 years' imprisonment. 18 U.S.C. § 1347.

Carrazana has failed to show that the district court plainly erred by enhancing his sentence based on facts found by the court by a preponderance of the evidence. We have held that a district court may enhance a sentence based on judge-found facts, as long as the defendant is sentenced under an advisory guidelines system and the sentence does not exceed the statutory maximum. *See Chau*, 426 F.3d at 1323; *Dean*, 487 F.3d at 854. Here, the statutory maximum was 10 years' imprisonment. *See* 18 U.S.C. § 1347. Carrazana's 72-month sentence was well below this limit. Carrazana was also sentenced post-*Booker*, under an advisory guideline scheme. Accordingly, we affirm Carrazana's 72-month sentence.

**AFFIRMED.**

16