**MARQUIP, INC., Plaintiff–Appellant,**

v.

**FOSBER AMERICA, INC. and Fosber SpA, Defendants–Appellees,**

and

**United Container Machinery, Inc., Defendant–Appellee.**

Nos. 99–1025, 99–1120.

United States Court of Appeals, Federal Circuit.

Dec. 6, 1999.

Rehearing Denied Jan. 27, 2000.

Russell J. Barron, Foley & Lardner, Milwaukee, Wisconsin, argued for plaintiff-appellant. With him on the brief were David J. Harth and Joan L. Eads, Foley and Lardner, Madison, Wisconsin. Of counsel were Allen A. Arntsen, Foley & Lardner, Madison, Wisconsin, and Jeffrey N. Costakos, Foley and Lardner, Milwaukee, Wisconsin.

David L. De Bruin, Michael, Best & Friedrich, LLP, Milwaukee, Wisconsin, argued for defendants-appellees, Fosber America, Inc. and Fosber SpA. With him on the brief were Gary A. Ahrens, Toni L. Bonney and J. Christopher Carraway.

John E. Nathan, Fish & Neave, New York, New York, argued for defendant-appellee, United Container Machinery, Inc. With him on the brief were Daniel M. Gantt and Catherine Nyarady. Of counsel on the brief was John F. Hovel, Kravit, Gass, Hovel & Leitner, S.C., Milwaukee, Wisconsin.

Before MICHEL, RADER, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States District Court for the Western District of Wisconsin ruled that defendants Fosber America, Inc., Fosber SpA, and United Container Machinery, Inc. did not infringe U.S. Patent No. 4,200,276 (the '276 patent) under the doctrine of equivalents. *See Marquip, Inc. v. Fosber America, Inc.,* No. 96–C–726–S (W.D.Wis. Sept.14, 1998) (order). The district court also denied Marquip, Inc.'s motion for relief under Fed.R.Civ.P. 60(b). *See Marquip, Inc. v. Fosber America, Inc.,* 30 F.Supp.2d 1142 (W.D.Wis. 1998) (order). Because the district court properly concluded as a matter of law that the claims at issue cannot cover the accused device under the doctrine of equivalents, this court affirms. This court also affirms the district court's denial of the Rule 60(b) motion because the district court did not abuse its discretion.

## I.

The '276 patent claims a method and device for shingling and stacking corrugated paperboard sheets without interrupting the continuous flow of sheets. Because the corrugator runs continuously, it is difficult to remove completed stacks of sheets without interrupting the flow of the corrugator. The invention solves this problem by creating a gap in the flow of sheets. The gap allows sufficient time to discharge a completed stack without interrupting the corrugator. Claims 9 and 13, the only two claims at issue, recite a method and a device, respectively, for automatically

changing the speed of the conveyor belts to create a gap:

9. In the method of conveying sheets in succession from a first location along a plurality of separate in-line conveyors to a stacker wherein a vertical stack of a predetermined number of sheets is to be formed, and wherein said plurality of conveyors are traveling at the same speed, the steps of:

(a) shingling said sheets as they pass said location to form a group of shingled sheets for stacking,

(b) increasing the speed of said group of shingled sheets,

(c) and slowing each said separate in-line conveyor individually and seccessively [sic] in a downstream direction *in response to passage of the trailing end* of said group past the end of each respective separate conveyor to thereby slow sheets traveling upstream of said group of sheets.

13. In a device for conveying sheets in succession from a first location along a plurality of separate in-line conveyors to a stacker wherein a vertical stack of a predetermined number of sheets is to be formed, and wherein said plurality of conveyors are traveling at the same speed, the combination comprising:

(a) means for shingling said sheets as they pass said location to form a group of shingled sheets for stacking,

(b) means for increasing the speed of said group of shingled sheets,

(c) and means for slowing each said separate in-line conveyor individually and successively in a downstream direction *in response to passage of the trailing end* of said group past the end of each respective separate conveyor to thereby slow sheets traveling upstream of said group of sheets.

'276 patent, col. 7, ll. 22–39; col. 8, ll. 31–47 (emphasis added).

Marquip asserts that versions 1, 2, 3, and 4 of the Fosber device infringe claims 9 and 13 of the '276 patent. Both parties rely on a stipulated description of the process in the accused Fosber devices. Version 2 is the most basic of the Fosber devices. In Version 2, a "shingling nip" continuously shingles or overlaps sheets onto a moving conveyor. The first conveyor moves the shingled sheets to a second conveyor, which moves at the same speed as the first. The Fosber device has an interrupt mechanism between the first and second conveyors. This mechanism grasps and holds some sheets to create a gap in the flow of sheets. Specifically, when the trailing end of the last sheet in a predetermined number of sheets (the preceding group) moves past the pinch point of the interrupt mechanism, the mechanism grabs and stops the next sheet. This action creates a gap and starts the next group of a predetermined number of sheets (the succeeding group).

At about the same time the interrupter grasps the first sheet in the next group, two other events also occur: (1) the second conveyor and all other conveyors downstream of the interrupt mechanism speed up, carrying the preceding group toward a stacker at the end of the conveyors, and (2) the first conveyor slows down. When the preceding group leaves the third conveyor, the second conveyor slows again to the pace of the first conveyor and the interrupt mechanism releases the succeeding group. Similarly, the third conveyor slows when the preceding group passes the fourth conveyor. The fourth conveyor slows when the preceding group is on a downstacker at the end of the conveyors. The downstacker discharges the preceding group from the stacker and makes room for a new stack.

Fosber's Version 1 differs from Version 2 only in the location of the interrupt mechanism—namely midway along the second conveyor. When the interrupt mechanism closes, the interrupt mechanism itself moves at the same speed as the first conveyor. In Version 1, the second conveyor operates exactly the same as in Version 2, namely speeding up to widen

the gap. Version 3 is the same as Version 1, except that two conveyors replace the first conveyor, but they always run at the same speed. Version 4 is the same as Version 2 except that, again, two conveyors replace the first conveyor and always run at the same speed. For purposes of this opinion, it suffices to discuss Version 2 as representative of all Fosber devices, which contain an interrupt mechanism and conveyors with varying speeds.

At the initial trial, the district court considered two of Marquip's patents, the '276 patent and U.S. Patent No. 4,273,- 325. The district court granted summary judgment that Fosber did not infringe the two patents either literally or under the doctrine of equivalents. *See Marquip, Inc. v. Fosber America, Inc.*, No. 96–C– 726–S (W.D.Wis. June 10, 1997) (order) (*Marquip I*). When Marquip appealed *Marquip I*, this court affirmed the district court's grant of summary judgment that Fosber did not literally infringe the '276 patent but vacated the summary judgment of non-infringement under the doctrine of equivalents. *See Marquip, Inc. v. Fosber America, Inc.*, 155 F.3d 567, 1998 WL 314628, No. 97–1441 (Fed.Cir.1998) (*Marquip II*). As part of the ruling, this court construed the limitation "group" as an accumulation of a predetermined number of sheets. On remand, the district court again granted summary judgment of non-infringement under the doctrine of equivalents. *See Marquip, Inc. v. Fosber America, Inc.*, No. 96–C–726–S (W.D.Wis. Sept.14, 1998) (order) (*Marquip III*).

The critical issue in *Marquip III* was whether element (c) of claims 9 and 13 covered the Fosber device. The district court concluded that the Fosber device performs the recited function of slowing the conveyors and obtains the result of decreasing the speed of the sheets traveling upstream. *See id.* at 10. The district court determined, however, that the Fosber device performs the function "in a fundamentally different way." *Id.* In particular, the district court held that "[t]he

presence of a functional interrupt mechanism [in the Fosber device], not the minimal change in timing required by its presence, is that which makes defendants' machines operate in a substantially different way" from the claimed inventions. *Id.* at 13. Marquip appeals.

In a separate appeal, Marquip appeals the district court's refusal to set aside final judgment under Fed.R.Civ.P. 60(b). *See Marquip, Inc. v. Fosber America Inc.*, No. 96–C–726–S (W.D.Wis. Dec.8, 1998) (order) (*Marquip IV*). Marquip based its motion on newly discovered evidence about the Fosber device, allegedly withheld by Fosber during discovery. This court consolidates the two appeals and addresses both the infringement and Rule 60(b) issues in this opinion.

## II.

■ This court reviews a district court's grant of summary judgment without deference. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment requires the moving party to show both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In reviewing the district court's summary judgment, this court draws all reasonable inferences from the evidence in favor of the non-movant, Marquip. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ To infringe under the doctrine of equivalents, the accused product must contain each claim element or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997). The accused product is equivalent to a claimed element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Id.* at 39–40, 117 S.Ct. 1040; *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1517, 35 USPQ2d 1641,1644 (Fed.Cir.

1995) (*en banc*), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

■ Based on the fundamental principle that no one deserves an exclusive right to technology already in the public domain, this court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art. *See Wilson Sporting Goods v. David Geoffrey & Assoc.,* 904 F.2d 677, 683, 14 USPQ2d 1942, 1948 (Fed.Cir.1990). In *Wilson Sporting Goods,* this court explained the reasons prior art limits the range of equivalents. At the outset, this court posed the question: "If the doctrine of equivalents does not involve expanding the claims, why should the *prior art* be a limitation on the range of permissible equivalents?" *Id.* at 684 (emphasis in original). The answer to the question, this court explained, was not that courts construe claims narrowly to preserve their validity; application of the doctrine of equivalents is not a claim interpretation process. *See id.* Rather, the reason for the limitation is to prevent the patentee from obtaining under the doctrine of equivalents coverage it could not have obtained from the Patent and Trademark Office (PTO) by literal claims. Because prior art limits the exclusive right available to an inventor, it also limits the range of permissible equivalents of a claim. *See id.*

As a helpful illustration of the operation of this limitation on the doctrine of equivalents, this court visualized a hypothetical patent claim, sufficient in scope to cover literally the accused device. *See id.; Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1449, 17 USPQ2d 1806, 1810 (Fed.Cir.1991) ("While not obligatory in every doctrine of equivalents determination, the hypothetical claim rationale ... helps define the limits imposed by prior art on the range of equivalents."). Then this court examined whether the PTO would have allowed that hypothetical claim over the prior art at the time of invention. *See Wilson Sporting Goods,* 904 F.2d at 684. If the claim would have been allowed, then prior art is not a bar to infringement by equivalents. If the claim would not have been allowed, prior art bars a finding of infringement.

In this case, the district court found that the application of the doctrine of the equivalents to encompass Fosber's device would ensnare technology in the prior art at the time of Marquip's invention. Specifically, the district court found that the Vermes prior art patent, U.S. Patent No. 4,040,618, limits the range of permissible equivalents. Vermes teaches a sheet stacker with conveyor belts and an interrupt device. Specifically, Vermes discloses:

> [T]he frictional *interrupter bar 90 is the sole means used to interrupt the flow of sheets* during the stack transfer cycle. The rubber pad of stop bar 90 frictionally engages the underside of the sheet passing over the gap between the two conveyors. Movement of the sheet is thereby stopped and *at substantially the same time, conveyor 13 shifts to high speed mode and conveyor 12 shifts to low speed mode.* At high speed, belt 13 quickly transfers onto the stack those sheets downstream of the raised interrupter bar 90. In the meantime, the belt of conveyor 12 moving at low speed continues to receive sheets from the corrugator and advance them at about one-half normal speed, toward the bar 90. In this way, an excessive pile up of sheets behind the stop bar is avoided.

U.S. Patent No. 4,040,618, col. 9, ll. 19–35 (emphasis added). In other words, when the last sheet of the preceding group passes the interrupt mechanism, the Vermes interrupt mechanism engages and, at substantially the same time, the Vermes downstream conveyor accelerates and the upstream conveyor slows.

■ This description of the prior art Vermes technology describes with precision the operation of the Fosber accused device as well. When the processing circuitry of the Fosber device determines

that the preceding group of sheets has completely passed through the shingling nip, the bar and rubber pad of the interrupt mechanism engage to prevent the succeeding group of sheets from feeding onto the next conveyor. At substantially the same time, Fosber's downstream conveyor accelerates and the upstream conveyor slows. Significantly, in the Fosber device, as in Vermes, the upstream conveyor slows in response to the interrupt engaging, not in response to passage of the trailing end as the asserted claims recite. *See Marquip II* at *4. In terms of the helpful *Wilson Sporting Goods* analysis, the Vermes prior art would have precluded patentability of a hypothetical claim encompassing all elements of the Fosber accused device.

Accordingly, it would be improper to interpret element (c) of the claims to cover the Fosber device by equivalence because to do so would render the asserted claims unpatentable over the prior art. *See Wilson Sporting Goods*, 904 F.2d at 684. Indeed, the reexamination prosecution history of the '276 patent shows as well that the Fosber device does not infringe by equivalents element (c) of claims 9 and 13. During reexamination of the '276 patent, the examiner considered prior art not previously before the PTO, including Vermes. Upon review, the examiner found that "[c]laims 9 and 13 define over the prior art by the limitations at claim 9(c) and claim 13(c) relating to the slowing *in response to the trailing end* of the group." J.A. at 429 (emphasis added). In effect, "[t]he essence and elegance of the '276 patent is its *exclusive use* of changing conveyor speeds to create the gap necessary to buy time to unload the stacker." *Marquip III* at 10 (emphasis added).

Marquip's arguments focusing on the differences in sheet counting between Vermes and the '276 patent is only marginally, if at all, relevant. Rather, the determinative factor in the infringement analysis turns on whether the slowing of the conveyors is in response to the passage of

the trailing end, as the claims recite, or in response to the interrupt mechanism, as Vermes teaches and as the Fosber device operates. Marquip does not show any genuine disputes of material fact to satisfy its burden "to prove that the range of equivalents which it seeks would not ensnare the prior art." *Wilson Sporting Goods*, 904 F.2d at 685 ("The patent owner has always borne the burden of proving infringement." (internal citations omitted)).

Thus, the district court properly held as a matter of law that the Fosber device and method does not infringe under the doctrine of equivalents because it uses technology—an interrupt mechanism and changing conveyor speeds—already in the prior art. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423, 44 USPQ2d 1103, 1106 (Fed.Cir.1997) ("Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact-finder could find equivalence."). Accordingly, this court affirms the district court's grant of Fosber's motion for summary judgment of non-infringement under the doctrine of equivalents.

### III.

On October 13, 1998, within a month of the district court's decision on remand in *Marquip III* but more than one year after the initial decision in *Marquip I*, Marquip filed a Rule 60(b) motion seeking relief from the final judgment of *Marquip III* in light of newly discovered evidence. Marquip alleged that Fosber withheld evidence about its device pertinent to infringement. Therefore, Marquip sought relief under Rule 60(b)(1), (2), (3), and (6), which states in pertinent part:

[T]he court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud ..., misrepresentation, or other misconduct of an adverse party; ... or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b). In *Marquip IV,* the district court denied the Rule 60(b) motion under subsections (1), (2), and (3) as untimely because the motion was filed more than one year after the initial ruling in *Marquip I.* The district court also denied relief under subsection (6).

■ To review a purely procedural question not pertaining to patent law, such as a Rule 60(b) motion, this court applies the rule of the regional circuit, in this case the United States Court of Appeals for the Seventh Circuit. *See Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1550, 3 USPQ2d 1412, 1421 (Fed.Cir.1987) ("Because denial of a Rule 60(b) motion is a procedural issue not unique to patent law, we apply the rule of the regional circuit where appeals from the district court would normally lie."); *see also Midwest Industries, Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.1999)(en banc, in relevant part). The Seventh Circuit, and therefore this court, uses an abuse of discretion standard to assess the merits of Rule 60(b) questions. *See Money Store, Inc. v. Harriscorp Finance, Inc.,* 885 F.2d 369, 372 (7 thCir. 1994).

Upon review, this court detects no abuse of the district court's broad discretion to apply Rule 60(b). As to the denial of relief under subsections (1), (2), and (3), the key issue is whether the one-year limitation is measured from the entry of final judgment in the initial trial or the remanded trial.

The district court concluded that "a review of the [Rule 60(b) ] motion and the nature of the previous judgments leads to the inescapable conclusion that [Marquip] is actually seeking relief from the final judgment of June 11, 1997 entered outside the jurisdictional limit." *Marquip IV* at 6.

■ Without cases directly on point in the Seventh Circuit, the district court considered cases of other circuits addressing the effect of a remand on the timing of a Rule 60(b) motion. In this case, the parties completed discovery before entry of the 1997 judgment in *Marquip I.* Also, Marquip recognizes that the newly discovered facts are critical to both *Marquip I* and its affirmance in *Marquip III.* Thus, the district court committed no reversible error in determining that the initial judgment in *Marquip I* is the appropriate measuring date for a Rule 60(b) challenge. Marquip could have made a Rule 60(b) motion on the same basis against the original judgment. *See Amstar Corp.,* 823 F.2d at 1550 (rejecting a Rule 60(b) motion as untimely because the motion related to issues of an earlier judgment before remand); *see Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 752 F.2d 178, 184 (5th Cir. 1985) (holding that "[t]he date of the original judgment is the proper date of reference for consideration of [the Rule] 60(b) motion"); *Moolenaar v. Government of Virgin Islands,* 822 F.2d 1342, 1348 (3rdCir. 1987) ("Although the motion was brought only six weeks after the district court's judgment on remand, the reason for the attack upon that judgment was available for attack upon the original judgment.... [Thus, the Rule 60(b) ] motion was 'not made within a reasonable time.' ").

Therefore, Marquip cannot "resurrect its literal infringement claims and expand them to claims not pursued prior to the 1997 judgment." *Marquip IV* at 9. In light of the policy promoting the finality of judgments, this court finds no discernible abuse of discretion by the district court in

denying the Rule 60(b) motion under subsections (1), (2), and (3).

 The district court also did not abuse its discretion in denying relief under subsection (6). Marquip sought relief under this "catch-all" subsection without a time limitation. Relief under Rule 60(b)(6), however, is available only when the basis for relief does not fall within any of the categories specifically enumerated in Rule 60(b) and when the circumstances are extraordinary. *See Wesco Prods. Co. v. Alloy Automotive Co.*, 880 F.2d 981, 983 (7thCir. 1989) ("[I]f the asserted grounds for relief fall within the terms of the first three clauses of Rule 60(b), relief under the catchall provision is not available. The rationale underlying this principle is that the one year time limit applicable to the first three clauses of Rule 60(b) would be meaningless if relief was also available under the catchall provision."); *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in delay.").

Here, Marquip satisfies neither requirement. First, the basis for Marquip's motion could have fallen under Rule 60(b)(2) as newly discovered evidence or Rule 60(b)(3) as misrepresentation or misconduct by Fosber. Second, although Fosber may have "engaged in gamesmanship by strategically limiting disclosures based on an unreasonably narrow interpretation of [Marquip's] discovery requests," the district court found no evidence of "false responses to discovery requests." *Marquip IV* at 11. Based on this record, this court finds that the district court did not abuse its discretion. Fosber's behavior does not rise to the level of "extraordinary circumstances" necessary to invoke subsection (6).

## CONCLUSION

Because the Fosber device falls within the prior art, this court affirms the district court's grant of Fosber's motion for summary judgment of non-infringement under the doctrine of equivalents. Additionally, this court also affirms the district court's denial of Marquip's motion under Rule 60(b).

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*