ULTRA–TEX SURFACES, INC. and
Dryvit Systems, Inc., Plaintiffs–
Appellants,

v.

HILL BROTHERS CHEMICAL CO.
and Omega Products Corp., De-
fendants–Cross Appellants,

and

Vincent Chacon, Defendant.

Nos. 99–1018, 99–1024.

United States Court of Appeals,
Federal Circuit.

Feb. 29, 2000.

Edward R. Schwartz, Christie, Parker & Hale, LLP, of Pasadena, California, argued for plaintiffs-appellants.

James E. Hawes, Levin & Hawes, of Laguna Beach, California, argued for defendants-cross appellants. With him on the brief were Michael G. Dawe and Nancy R. Tragarz, Prenovost, Normandin, Bergh & Dawe, of Santa Ana, California.

Before MAYER, Chief Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

Ultra–Tex Surfaces, Inc. and Dryvit Systems, Inc. (collectively "Ultra–Tex") appeal from the decision of the United States District Court for the Central District of California holding that Hill Brothers Chemical Co. and Omega Products Corp. did not infringe claim 6 of U.S. Patent 5,502,941 under the doctrine of equivalents. *See Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, Nos. SA CV 96–1230, –1232 GLT (EEx) (C.D.Cal. Aug. 21, 1998) (judgment and order). Hill Brothers and Omega cross-appeal from the district court's decision that claim 6 was not invalid as obvious under 35 U.S.C. § 103. Because the district court did not err in its conclusions, we affirm.

## BACKGROUND

### A. *The Claimed and Accused Processes*

The '941 patent is directed to processes for creating low-cost, ornamental concrete surfaces. The written description discloses, for example, that the claimed processes can be used to create an imitation brick surface on a concrete substrate at considerably lower cost than inlaying actual bricks into that substrate. *See* '941 patent, col. 1, ll. 52–58. Claim 6, the only claim at issue, depends from independent claim 5, and claims the following process:

5. A process for coating a substrate with a decorative surface comprising mixing a first batch of liquid mortar consisting of a mixture of cement, sand and an aqueous solution of adhesive resin and applying a first layer of said liquid mortar to said surface;

allowing said first layer to cure;

providing a flexible template panel having a pattern of desired grout lines, an adhesive layer and a backing layer;

removing said backing layer to expose said adhesive layer;

securing said template to said first layer;

mixing a second batch of cement, sand and an aqueous solution of adhesive resin including also a color pigment contrasting with the color of said first batch;

applying a second layer of said second batch of liquid mortar over said first layer and said template and allowing said second layer to fully dry;

removing said template with any part of said second layer immediately above said template, and allowing said second layer to finish curing; and

applying a coat of concrete sealer material over said first and second mortar layers.

6. A process as claimed in claim 5 wherein said flexible template is of heavy wax impregnated paper with adhesive backing.

'941 patent, col. 7, 1. 13 to col. 8, 1. 14 (paragraphing added). Figures 8 and 11 of the '941 patent, which have been slightly modified for clarity, depict several of the key steps in the claimed process as follows:

In brief, a first batch of liquid mortar is mixed and applied to substrate 40 to form first mortar layer 42. After that layer cures, an adhesive backed, wax impregnated template 44 is secured to the first mortar layer 42 after the template's adhesive backing is removed. A second batch of liquid mortar is mixed and applied over template 44 and first mortar layer 42 to form the second mortar layer 46. That second layer is allowed to dry, and template 44 is removed. The second mortar layer 46 is allowed to cure, and a sealant coat is applied to the finished product.

The accused processes, Hill Brothers' "Desert Crete" process and Omega's "Decostone" process, follow essentially the same steps set forth in claim 6. The only difference between the accused and claimed processes is that the template used in the accused processes is comprised of "polycoat paper" instead of "heavy wax impregnated paper."

### B. *The District Court*

Ultra–Tex sued Hill Brothers and Omega (hereinafter "Hill Brothers"), alleging infringement of all eight claims of the '941 patent. Hill Brothers moved for summary judgment of noninfringement on the grounds that claims 1–8 were invalid under 35 U.S.C. §§ 102(a), (b), (f), (g), and 103(a). *See Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, Nos. SA CV 96–1230, –1232 GLT (EEx) (C.D.Cal. July 7, 1998) (order denying defendant's motion for summary judgment). In response, Ultra–Tex filed a statutory disclaimer in the Patent and Trademark Office ("PTO") disclaiming all but claim 6 of the '941 patent. *See id.* at 2. Focusing exclusively on Hill Brothers' anticipation arguments under § 102(a) and obviousness arguments under § 103, the district court denied Hill Brothers' motion, concluding that genuine issues of material fact existed relating to both grounds of invalidity. *See id.* at 3–10. Shortly thereafter, a bench trial was commenced on July 28, 1998.

Following a six-day trial, the district court announced its findings of fact and conclusions of law from the bench. The court found no literal infringement, *see* Tr. at 963, a finding not challenged on appeal. In its doctrine of equivalents infringement analysis, the court applied the "function, way, result" methodology described in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), and found that the polycoat paper template used in the accused pro-

cess (the only feature distinguishing the claimed and accused processes) was prima facie an equivalent of a heavy wax impregnated template. *See* Tr. at 963. The court then employed the hypothetical claim methodology that we established in *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 14 USPQ2d 1942, (Fed.Cir.1990), to determine whether the scope of equivalents asserted by Ultra–Tex would impermissibly ensnare the prior art. Having found that a polycoat template was simply a paper template coated with polyethylene, the district court held as a matter of law that a hypothetical claim encompassing the accused process would read on identical prior art processes using such templates. *See* Tr. at 963–69. Accordingly, the court held that Hill Brothers was not liable for infringement under the doctrine of equivalents. The court also held that Hill Brothers failed to prove that claim 6 was anticipated or would have been obvious under § 103(a). *See id.* at 972–74.

Ultra–Tex appealed the district court's noninfringement ruling, and Hill Brothers cross-appealed the court's ruling that claim 6 was not invalid under § 103(a). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standard of Review*

■ Determining whether an accused process or device infringes a patent claim is a two-step process. "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." *Streamfeeder, LLC v. Sure–Feed Sys. Inc.*, 175 F.3d 974, 981, 50 USPQ2d 1515, 1519 (Fed.Cir.1999). Claim construction is a question of law that we review de novo. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174

(Fed.Cir.1998) (en banc). Infringement, either literal or under the doctrine of equivalents, is a question of fact that we review for clear error when tried without a jury. *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692, 48 USPQ2d 1610, 1614 (Fed.Cir.1998). Whether an asserted scope of equivalents would impinge on prior art is an issue of law that we review de novo. *See Wilson*, 904 F.2d at 683–84, 14 USPQ2d at 1948.

### B. *Infringement*

■ Ultra–Tex argues that the district court erred in holding that Hill Brothers did not infringe claim 6 under the doctrine of equivalents. Ultra–Tex first asserts that the court erred in finding that the accused process used a polyethylene coated paper template. Ultra–Tex contends that while there was testimony that the polycoat template employed by the accused process was made of polyethylene coated paper, that testimony was self-interested and biased, and Hill Brothers otherwise failed to present any competent evidence on that issue. Ultra–Tex also argues that the court erred by failing to consider all the limitations of its proposed hypothetical claim, and thereby evaluated an unpatentably broad hypothetical claim.

Hill Brothers responds that the district court did not err in holding that it was not liable for infringement. Hill Brothers contends that it was Ultra–Tex's burden to prove the composition of the accused template as the party alleging infringement, and that, in any event, the testimony of Ultra–Tex's former employee, Vincent Chacon, supports the court's finding that the accused process used a polyethylene coated paper template. We understand Hill Brothers to further argue that the court properly disregarded the limitations that Ultra–Tex added to claim 6 via its hypothetical claim, especially since they lack any support in the specification, and correctly held as a matter of law that the

hypothetical claim was unpatentably broad.

As an initial matter, it is beyond dispute that Ultra–Tex bore the burden of proving the composition of the accused template. While Ultra–Tex argues that Hill Brothers failed to prove the composition of the accused template, it is axiomatic that the *patentee* bears the burden of proving infringement. *See, e.g., Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1578, 27 USPQ2d 1836, 1840 (Fed.Cir.1993). Ultra–Tex accurately indicates that the record evidence on the composition of "polycoat" is scant, but Ultra–Tex is itself responsible for this shortcoming; the only record evidence on the identity of polycoat was provided by Hill Brothers, the accused infringer.[1]

Ultra–Tex is thus left to argue that the district court accorded improper weight to Hill Brothers' evidence on the polycoat issue; we agree with Hill Brothers that these arguments are unavailing. In support of Hill Brothers' contention that its polycoat paper template was comprised of paper coated with polyethylene, Vincent Chacon, who had previously ordered polycoat templates for Ultra–Tex,[2] testified that the terms "polycoat" and "polyethylene coated" are used interchangeably. *See* Tr. at 517. He further testified that his understanding of the meaning of the term "polycoat" was based on information from Fox Paper, an Ultra–Tex supplier, which had informed him that the polycoat paper

that he had ordered was paper coated with polyethylene. *See id.* at 524. Ultra–Tex argues that the district court erred in according that testimony any weight, because Chacon was an interested witness and was biased against Ultra–Tex for being named a defendant in the lawsuit. Even if these allegations were true, they go to the weight to be accorded the evidence by the fact-finder, a matter not readily reversed by an appellate court. In any event, in the absence of any contrary evidence regarding the composition of the accused template from the party charged with proving that fact, we conclude that the district court did not clearly err in finding that polycoat is simply paper coated with polyethylene.

Turning to the court's hypothetical claim analysis, we agree with Hill Brothers that the court properly held as a matter of law that a hypothetical claim covering Hill Brothers' processes would impermissibly ensnare the prior art. Hypothetical claim analysis provides a practical methodology for determining whether a claim that has been "broadened" under the doctrine of equivalents impermissibly ensnares the prior art in its newly expanded form. *See Wilson*, 904 F.2d at 684, 14 USPQ2d at 1948.[3] Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to *literally* encompass the accused product or process. *See id.* If that claim would have been allowed by the PTO over the prior art, then the prior art

---

1. As we stated at oral argument, we are troubled by the fact that Ultra–Tex brought this suit without conducting any serious discovery on the most crucial aspect of the accused process.

2. Interestingly, just months after the '941 patent issued, Ultra–Tex itself abandoned its use of heavy wax impregnated paper templates in favor of polycoated paper templates. *See Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, Nos. SA CV 96–1230, –1232 GLT (EEx), at 7 (C.D.Cal. Oct. 26, 1998) (order granting defendant's motion for attorney fees).

3. As we recently acknowledged in *Streamfeeder*, the doctrine of equivalents does not operate to "broaden" claims, but rather broadens the right to exclude. See Streamfeeder, 175 F.3d at 981 n. 1, 50 USPQ2d at 1520 n. 1. For the sake of convenience, however, we will likewise use these terms here, "cognizant of the fact that it is the right to exclude which is being expanded, not the claims." *Id.*

does not bar the application of the doctrine of equivalents. *See Marquip, Inc. v. Fosber Am., Inc.,* 198 F.3d 1363, 1367, 53 USPQ2d 1015, 1018 (Fed.Cir.1999). Conversely, if that claim would not have been allowed, the prior art bars application of the doctrine and infringement by equivalence may not be found. *See id.*

Despite the utility of this methodology, in *Streamfeeder* we emphasized that hypothetical claim analysis is not a vehicle for a patentee to "freely redraft granted claims" by expanding some limitations in order to read on an accused process or device while narrowing other limitations to avoid prior art. *See Streamfeeder,* 175 F.3d at 983, 50 USPQ2d at 1521. We also explained that while the accused infringer must come forward with evidence that the hypothetical claim reads on the prior art, once the patentee makes out a prima facie case of infringement by equivalence, the ultimate burden of persuasion rests on the patentee to show that the hypothetical claim does not read on the prior art. *See id.* at 982–83, 175 F.3d 974, 50 USPQ2d at 1520–21.

In the present case, Ultra–Tex provided the district court with a hypothetical claim derived from claim 6, with deletions represented by brackets and additions indicated by underscore:

> 5. A process for coating a substrate with a decorative surface *having clean distinct grout lines* comprising mixing a first batch of liquid mortar consisting of a mixture of cement, sand and an aqueous solution of adhesive resin and applying a first layer of said liquid mortar to said surface;
>
> allowing said first layer to cure;
>
> providing a flexible template panel *which is substantially impervious to water* having a pattern of desired grout lines, an adhesive layer and a backing layer;
>
> removing said backing layer to expose said adhesive layer;
>
> securing said template to said first layer;
>
> mixing a second batch of cement, sand and an aqueous solution of adhesive resin including also a color pigment contrasting with the color of said first batch;
>
> [applying] *troweling* a second layer of said second batch of liquid mortar over said first layer and said template [and] *without first spraying said second batch, within said template said template adheres to said first cemented layer tightly enough to avoid infiltration of the second layer material between the first layer-template bond;*
>
> allowing said second layer to fully dry;
>
> removing said template with any part of said second layer immediately above said template[, and] *wherein said template withstands mechanical pressure so as to remain in tact [sic] during removal of the template;*
>
> allowing said second layer to finish curing; and
>
> applying a coat of concrete sealer material over said first and second mortar layers.
>
> [6. A process as claimed in claim 5 wherein said flexible template is of heavy wax impregnated paper with adhesive backing.]

Ex.App. at 324. As made clear by the abundant bracketing and underscoring, Ultra–Tex made considerable alterations to original claim 6. In effect, claim 6 was deleted and only a modified claim 5 remained. The limitation specifying template composition, *i.e.,* the "heavy wax impregnated paper" limitation, was deleted. At the same time, four limitations were added. The claimed process now must create a decorative surface with "clean distinct grout lines," and the template now must (1) be "substantially impervious to water," (2) prevent bleeding "of the second

layer material between the first layer template bond," and (3) "withstand[ ] mechanical pressure," *i.e.*, not tear upon removal.

Upon consideration of this hypothetical claim, we conclude that the district court correctly held as a matter of law that such a claim would read on the prior art. We first note that as in *Streamfeeder*, Ultra–Tex used hypothetical analysis to "freely redraft" its claim by impermissibly broadening and narrowing it at the same time, a practice our case law clearly forbids:

> While use of a hypothetical claim may permit a minor extension of a claim to cover subject matter that is substantially equivalent to that literally claimed, one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here, and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art. Slight broadening is permitted at that point, but not narrowing.

*Streamfeeder*, 175 F.3d at 983, 50 USPQ2d at 1521.[4] Thus, the hypothetical claim is only a device for limited, not substantial, inclusion of unclaimed subject matter and not for exclusion of unduly limiting subject matter. The claim created by Ultra–Tex here does not pass muster.

However, even if we view the hypothetical claim with the added limitations that narrowed original claim 6, it is clear that Ultra–Tex's hypothetical claim would not have been allowed by the PTO, as the accused process that it encompasses was in public use more than one year prior to the January 3, 1994 filing date of the '941 application. *See* 35 U.S.C. § 102(b) (1994) ("A person shall be entitled to a patent

unless ... the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...."); *In re Epstein*, 32 F.3d 1559, 1564, 31 USPQ2d 1817, 1820 (Fed.Cir.1994) ("The section 102(b) 'public use' and 'on sale' bars are not limited to sales or uses by the inventor or one under the inventor's control, but may result from activities of a third party which anticipate the invention, or render it obvious."). An invalidating public use is just as damaging to the patentability of a proposed hypothetical claim as any other type of prior art.

Hill Brothers presented the testimony of numerous individuals in the ornamental concrete art, along with corroborating evidence, to support its contention that its processes were in the prior art. We need only focus on the testimony of David Maietta, the president and chief executive officer of Multicoat Corporation, and the evidence corroborating his testimony. Maietta testified that Multicoat had practiced the accused process, *i.e.*, the process recited in independent claim 5, using a polyethylene coated, adhesive backed paper template, prior to 1993. *See* Tr. at 401–403, 413. Hill Brothers corroborated Maietta's testimony with samples of the template used in Multicoat's process, as well as a December 22, 1992 letter from Artcrete Inc., Multicoat's supplier, indicating that it was sending sample templates with different adhesive backings for use in Multicoat's process. *See* Ex.App. at 184/SA4, 185/SA5, 198.

Thus, Hill Brothers satisfied its burden of production by presenting considerable evidence that Ultra–Tex's hypothetical claim would not have been allowed by the

---

**4.** Our decision in *Streamfeeder* had not yet issued at the time the district court rendered its oral decision from the bench. Nevertheless, the district court displayed considerable prescience in its hypothetical claim analysis, noting that Ultra–Tex's heavily redrafted hypothetical claim was of questionable merit.

*See* Tr. at 966 ("[T]he hypothetical [claim] that the plaintiff has prepared ... might be subject to criticism as to whether it is [in] the correct format of a hypothetical [claim] to be merely sufficient in scope to literally cover the accused process.").

PTO. Because Ultra–Tex did little more than allege that Hill Brothers had failed to satisfy its burden, Ultra–Tex failed to satisfy its ultimate burden of persuasion to the contrary. Accordingly, we conclude that the district court did not err in holding that Hill Brothers was not liable for infringement of claim 6. We have considered all the other arguments raised by Ultra–Tex but do not find them persuasive.

## C. *Invalidity*

In its cross-appeal, Hill Brothers argues that the district court erred in failing to hold claim 6 invalid as obvious under 35 U.S.C. § 103. Hill Brothers specifically contends that the claim 6 process would have been obvious over U.S. Patent 4,975,-303 in view of U.S. Patent 4,510,729. Hill Brothers further asserts that Ultra–Tex's objective considerations of nonobviousness are not probative on that issue, as Ultra–Tex failed to establish a nexus between those considerations and the claimed invention, and no competent evidence supports their existence. Ultra–Tex responds that the court properly held that Hill Brothers had failed to rebut the presumption of validity of claim 6, noting that Hill Brothers failed to submit any prior art that is more pertinent than the '303 and '729 patents, which had been considered by the examiner when he allowed claim 6. Ultra–Tex also argues that its alleged objective considerations of nonobviousness are supported by the required nexus, and that competent evidence does in fact support them.

■ An accused infringer alleging that a claim is invalid must overcome the statutory presumption of validity that attaches to an issued patent, *see* 35 U.S.C. § 282 (1994), by proving invalidity by facts supported by clear and convincing evidence. *See Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377, 51

USPQ2d 1948, 1953 (Fed.Cir.1999). In *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, we explained that when a party alleges that a claim is invalid based on the very same references that were before the examiner when the claim was allowed, that party assumes the following additional burden:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*American Hoist*, 725 F.2d 1350, 1359, 220 USPQ 763, 770 (Fed.Cir.1984); *see also Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1571, 230 USPQ 81, 84 (Fed. Cir.1986).

■ Aside from its basic contention that the district court erred in not holding the patent invalid based on the combination of the '303 and '729 patents, Hill Brothers offers no serious argument as to how the district court erred in accepting the examiner's interpretation of the prior art references as they relate to claim 6. As for the other prior art processes presented by Hill Brothers, it is undisputed that none of those processes employed a wax impregnated template. Accordingly, we conclude that the district court did not err in concluding that claim 6 was not proved invalid under § 103(a), and need not address Hill Brothers' arguments relating to the objective considerations of nonobviousness.

## CONCLUSION

The district court correctly concluded that Ultra Tex's hypothetical claim reads

on the prior art and that therefore Hill Brothers did not infringe claim 6 under the doctrine of equivalents. The court also did not err in concluding that Hill failed to overcome the presumption of validity associated with claim 6. Accordingly, we

*AFFIRM.*