**INNOVAD, INC., Plaintiff,**

v.

**MICROSOFT CORPORATION, et al., Defendants.**

**No. 4:99–CV–0986–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

June 6, 2000.

Jonathan Suder, Friedman Young Suder & Cooke, Fort Worth, TX, for Innovad Inc, plaintiff.

Thomas George Yoxall, Buford H Robertson, Jr, Locke Liddell & Sapp, Dallas, TX, John D Vandenberg, Garth Winn, Klarquist Sparkman Campbell Leigh & Whinston, Portland, OR, for Microsoft Corporation, defendant.

Joseph F Cleveland, Jr, Brackett & Ellis, Fort Worth, TX, for Psion Incorporated, defendant.

Douglas A Cawley, Hughes & Luce, Dallas, TX, for Ericsson Corporation dba Ericsson Technical Services Inc, defendant.

David H Harper, Haynes & Boone, Dallas, TX, Cathy Ann Bencivengco, John Allcock, Sean Cunningham, James Sarnecky, Gray Cary Ware & Freidenrich, San Diego, CA, for Hewlett–Packard Co, defendant.

John M DiMatteo, Karla G Sanchez, Neal K Feivelson, Patterson Belknap

Webb & Tyler, New York City, Colin P Cahoon, Carstens Yee & Cahoon, Dallas, TX, for Philips Electronics North America Corporation, defendant.

David Fielding, Nathan B Schattman, Fielding Parker Jones & Posey, Fort Worth, TX, Wayne Harding, Brobeck Phleger & Harrison, Austin, TX, for Apple Computer Inc, defendant.

V Bryan Medlock, Jr, Kathi Anne Cover, Matthew D Jones, Sidley & Austin, Dallas, TX, Joseph F Cleveland, Jr, Brackett & Ellis, Fort Worth, TX, for Everex Systems Inc, defendant.

Mack Ed Swindle, Michener Larimore Swindle Whitaker Flowers Sawyer Reynolds & Chalk, Fort Worth, TX, Gregory S Gewirtz, Lerner David Littenberg Krumholz & Mentlik, Westfield, NJ, for Sony Electronics Inc, defendant.

Martin Burr McNamara, C Glen Morris, Gibson Dunn & Crutcher, Dallas, TX, Kara F Stoll, C Larry O'Rourke, Liam O'Grady, Andrew C Sonu, Finnegan Henderson Farabow Garrett & Dunner, Washington, DC, for LG Electronics USA Inc, defendant.

Michael Brett Johnson, Lynn Stodghill Melsheimer & Tillotson, Dallas, TX, for Odyssey Computing Incorporated, defendant.

C Glen Morris, Gibson Dunn & Crutcher, Dallas, TX, Unspecified, Harvey Law Firm, Dallas, TX, for LG Electronics USA Inc, counter-claimant.

McBRYDE, District Judge.

## MEMORANDUM OPINION and ORDER

Came on for consideration the motion of defendant Microsoft Corporation ("Microsoft") for summary judgment. The court, having considered the motion, the response of plaintiff, Innovad, Inc., the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

## I.

### Plaintiff's Claims

On November 30, 1999, plaintiff filed its complaint in this action. Plaintiff alleges that defendants are infringing, inducing others to infringe, or contributing to the infringement of, claim 22 of U.S.Patent No. 4,882,750, which relates to a telephone dialer system that includes a portable dialer unit that can produce a selected sequence of dialing tones that may be preprogrammed in the memory of the unit (the "'750 patent"). Eight of the ten defendants make or sell hand-held or palmsized computers. Microsoft and defendant Odyssey Computing Incorporated manufacture software that may be installed on the computers made by the other defendants.[1]

## II.

### Microsoft's Motion for Summary Judgment

Microsoft urges that the '750 patent clearly states that it does not cover products of the type that plaintiff now accuses of infringement. Microsoft asks the court to grant all defendants judgment as a matter of law that claim 22 of the '750 patent is not infringed.[2]

## III.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to

---

1. Plaintiff mistakenly refers to Odyssey Computing Incorporated as a manufacturer of hardware. *See* Odyssey's Motion to Dismiss (filed February 7, 2000).

2. Microsoft does not cite any authority to support the proposition that the court can grant summary judgment to other defendants who have not joined in the motion. The court recognizes that its ruling effectively forecloses plaintiffs' claims against the remaining defendants; however, it will be up to those defendants to seek appropriate relief.

which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348.

## IV.

### *Undisputed Facts*

The abstract section of the '750 patent provides:

> A telephone dialer system consists of a programming unit, and a portable telephone dialer unit for producing a selected sequence of dual tone modulated frequency dialing tones, adapted to be programmed by the programming unit when said portable telephone dialer is releasably electrically coupled to said programming unit. The portable telephone dialer has a case, a reprogrammable memory, a programming interface, a speaker, a battery, a dual tone modulated frequency signal generating integrated circuit chip, and a single bi-state switch operable from the exterior of the case.

The "Background of the Invention" section of the patent provides, in pertinent part:

> 2.2. Description of the Prior Art
>
> It is a very common business practice for companies to give specially manufactured gifts to clients and prospective clients in an effort to generate more business....
>
> ... One very important goal of the specialty advertising industry is to make a company's phone number easily accessible to potential clients.
>
> A variety of repertory dialers are currently available in the market place. These repertory dialers have a keypad that allows the operator to program the dialer memory with a plurality of selected telephone numbers. When the operator wishes to dial a particular number, this number is retrieved from the repertory dialer memory through use of the keypad. Next, the operator places the repertory dialer speaker in close proximity with a telephone mouthpiece and

then causes the repertory dialer to produce a sequence of audible dial tones that correspond to the selected telephone number. Thus, the repertory dialer eliminates the task of physically dialing the desired number with the telephone keypad.

Repertory dialers have several inherent limitations that render them useless as specialty advertising give-away items. First, the keyboard on a repertory dialer is generally an expensive item which often renders the repertory dialer too expensive for specialty advertising use. Second, the keyboard on a repertory dialer greatly increases the size of the repertory dialer, often making the repertory dialer too large and cumbersome for specialty advertising use. Third, while repertory dialers can be programmed with a particular desired number, the potential customer can reprogram the repertory dialer with a different number through use of the keypad on said repertory dialer, destroying the advertising value of the dialer.

The "Summary of the Invention" section of the patent provides, in pertinent part:

The present invention is a telephone dialer system that yields a portable telephone dialer that is suitable for specialty advertising purposes. . . .

In the preferred embodiment, the programming unit consists. . . .

In the preferred embodiment, the dialer unit consists. . . .

In the preferred embodiment, the dialer unit. . . .

*The present invention has several distinct advantages over existing repertory dialers.* First, since the dialer unit has no keypad, it is less expensive than the repertory dialers and thus more suitable for specialty advertising use. Second, since the dialer unit has no keypad it is much smaller than existing repertory dialers and thus more portable and suitable for specialty advertising purposes. Third, since the repertory dialer has no

keypad it may not be reprogrammed by the end user. However, the dialer unit is not permanently programmed with a selected number and may be reprogrammed when desired by recoupling the dialer unit to the programming unit; this feature is particularly useful when a company number is changed, or when the dialer unit has been programmed with an incorrect number. Considerable savings can be realized due to the reprogrammable nature of the dialer unit of the present invention, since the dialer units are reuseable, and since programming errors may be corrected. Fourth, since the dialer unit has no keypad, a substantial portion of the surface area of the dialer case is available for custom printing.

(emphasis added).

Claim 22 of the '750 patent provides:

22. A telephone dialer system, comprising:

a case having at least one surface for substantially enclosing a small volume;

reprogrammable memory means disposed within said case for storing a selected sequence of digits during a programming mode, said digits constituting at least one telephone number;

signal means disposed within said case electrically coupled to said reprogrammable memory means for producing a sequence of dual tone modulated frequency signals corresponding to said at least one telephone number stored in said reprogrammable memory means during a dialing mode;

an audiofrequency output means electrically coupled to said signal means for producing a sequence of audiofrequency signals corresponding to said sequence of dual tone modulated frequency signals produced by signal means during said dialing mode;

at least one battery disposed within said case, electrically coupled and providing power to said reprogrammable

memory means, said signal means, and said audiofrequency output means;

a single, bi-state switch operable from the exterior of said case for activating said signal means to produce said sequence of dual tone modulated frequency signals during said dialing mode corresponding to said digits in said reprogrammable memory means;

programming means for programming said reprogrammable memory means with said at least one telephone number during said programming mode; and

means for releasably electrically coupling said reprogrammable memory means and said programming means only during said programming mode.

V.

*Law Applied to the Facts*

A. *General Principles.*

■■■ The first step in determining whether a patent has been infringed is to construe the patent claims. The court determines the scope and meaning of patent claims, since claim construction is a purely legal matter. *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1454–55 (Fed.Cir.1998) (en banc). In interpreting a patent, the court looks to the language of the claims, the specification, and the prosecution history. *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed.Cir. 1995). These constitute the record "on which the public is entitled to rely." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir.1996).

■■■ The second step of the analysis, after the patent claim has been construed as a matter of law, is to determine whether there is infringement of the patent, either literal or under the doctrine of equivalents. Literal infringement requires that every limitation of the patent claim be found in the accused device. *General Mills, Inc. v.* *Hunt–Wesson, Inc.,* 103 F.3d 978, 981 (Fed.Cir.1997). Under the doctrine of equivalents, infringement may be found if the accused product performs substantially the same function, in substantially the same way, to obtain substantially the same results as the claimed invention. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987). Ordinarily, whether an accused device infringes on a patented device is a question of fact. *General Mills,* 103 F.3d at 981; *Lifescan, Inc. v. Home Diagnostics, Inc.,* 76 F.3d 358, 359 (Fed.Cir.1996). However, summary judgment is appropriate if no genuine fact issue exists as to whether properly construed claims read on an accused device either literally or under the doctrine of equivalents. *Lifescan,* 76 F.3d at 359.

B. *Claim Construction.*

■■■ Claims must be read in view of the specification of which they are a part. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), *affirmed,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court recognizes that there is a fine line between reading a claim in light of its specification and reading a limitation into the claim from the specification. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998). A claim is not limited to preferred embodiments or specific examples in the specification. *Id.* For claim construction purposes, the specification may act as a dictionary to explain the invention and define the terms used in the claims. *Markman,* 52 F.3d at 979. Just as claims may not be limited to preferred embodiments, claims may not be broadened beyond the scope supported by the specification. *Wang Lab., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1383 (Fed.Cir. 1999).

The first page of the '750 patent includes, among other things, the abstract and a miniature drawing of the programming unit and portable telephone dialer unit. This is followed by seven drawing

sheets giving further graphic details as to how the invention works. Next is the background of the invention, followed by the summary of the invention. The background section describes as the prior art a variety of repertory dialers then currently available in the marketplace. Those dialers were described as having "a keypad that allows the operator to program the dialer memory with a plurality of selected telephone numbers." The repertory dialers were described as having "several inherent limitations" that rendered them useless as specialty advertising give-away items. First, the keyboard was too expensive to give away; second, the keyboard greatly increased the size, making the repertory dialer too large and cumbersome for specialty advertising use; third, the repertory dialers could be reprogrammed by potential customers.

After describing the background of the invention, the patent gives a summary of the invention. It begins:

> The present invention is a telephone dialer system that yields a portable telephone dialer that is suitable for specialty advertising purposes.

The next three paragraphs describe the invention in its preferred embodiment. The fifth paragraph is not limited to the preferred embodiment, but rather describes the "present invention" and its "distinct advantages over existing repertory dialers." These distinct advantages are (1) the dialer unit has no keypad; (2) the dialer unit has no keypad and is smaller than existing repertory dialers and thus more portable and suitable for specialty advertising purposes; (3) the repertory dialer has no keypad and may not be reprogrammed by the end user; and (4) since the dialer unit has no keypad, a substantial portion of the surface area of the dialer case is available for custom printing.

Reading claim 22 in light of the foregoing, it is clear that the patented portable telephone dialer has no keypad and is smaller than the earlier repertory dialers.

The word "small" is used to contrast the patented device from existing repertory dialers. And, the term "small volume" in claim 22 must be interpreted in the same manner as the term is used in claims 1, 5, and 8, where it is distinguished from a "portable telephone dialer." *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 (Fed.Cir. 1996) (all words in a claim must be given meaning); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir. 1995) (identical terms in different claims must be interpreted in a consistent manner). Plaintiff does not dispute that existing repertory dialers were pocket-size, having a 4.4 cubic inch volume.

Claim 22 further makes clear that the telephone dialer system contains only a single, bi-state switch operable from the exterior of the case for activating the signal. In other words, the telephone dialer system does not include a keypad as did existing repertory dialers. Moreover, the dialer unit itself had no mechanism through which the end user could reprogram the telephone number. Finally, claim 22 includes a "means for releasably electrically coupling said reprogrammable memory means and said programming means only during said programming mode." This means that the dialer unit is only programmed by temporary connection with the programming means during the programming mode. In other words, the programming means is coupled to the dialer unit only temporarily while it is being programmed. And, the end user cannot change the programming since the dialer has no keypad.

### C. *Infringement.*

■ Plaintiff's complaint names several hand-held or palm-sized computers that allegedly infringe claim 22 of the '750 patent. Plaintiff does not dispute that each of the accused hand-held computers has an integral keyboard with numeric keypad that may be used to delete, edit, or replace any stored phone number. Nor does

plaintiff dispute that the palm-sized computers have integral touch-screen keypads by which end users can delete, edit, and replace phone numbers. Moreover, the accused devices are larger than the repertory dialers described in the patent. Two defendants, including Microsoft, distribute software that may be installed on the accused devices.

Plainly, there is no literal infringement of the '750 patent by the accused products in this action. Nor is there infringement under the doctrine of equivalents. The concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1582 (Fed.Cir.1996). Here the patent itself distinguished problems with the prior art. Plaintiff cannot now claim that the patent extends to the prior art. *See, e.g., Dawn Equip. Co. v. Kentucky Farms, Inc.,* 140 F.3d 1009, 1017 (Fed.Cir.1998); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1574–75 (Fed.Cir.1997). As the Federal Circuit has explained, no one deserves an exclusive right to technology already in the public domain. *Marquip, Inc. v. Fosber America, Inc.,* 198 F.3d 1363, 1367 (Fed.Cir.1999).

## VI.

### ORDER

For the reasons discussed herein,

The court ORDERS that Microsoft's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on its claims against Microsoft; and that such claims be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of plaintiff's claims against Microsoft.

### FINAL JUDGMENT AS TO CERTAIN CLAIMS

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES, and DECREES that plaintiff, Innovad, Inc., take nothing on its claims against defendant Microsoft Corporation and that such claims be, and are hereby, dismissed with prejudice. The court further ORDERS, ADJUDGES, and DECREES that Microsoft Corporation have and recover its court costs from plaintiff.